UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSTIEL ORTIZ,<br>    Plaintiff, | :<br>:<br>: |
| v. | : Case No. 3:21cv974(KAD) |
| WARDEN MCCORMIN, ET AL.,<br>    Defendants. | :<br>:<br>: |

**INITIAL REVIEW ORDER**

Plaintiff, Jostiel Ortiz ("Ortiz"), a now sentenced inmate, initiated this civil rights action pursuant to Title 42, U.S.C. §1983 against Warden McCormin, Captain Alexander, Lieutenants Mucciani and Harley, and Correctional Officer Rios arising out of Ortiz's confinement at Hartford Correctional Center as a pretrial detainee from March 10, 2020 to August 30, 2020 and as a sentenced inmate from August 31, 2020 to May 1, 2021.[1]  For the reasons set forth below, the court dismisses the complaint in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*  This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

---

[1]  The State of Connecticut Department of Correction website reflects Ortiz's most recent date of admission to the DOC was on September 26, 2018 and that he was sentenced on August 31, 2020 to a five-year period of incarceration.  *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=383441.

The court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted). Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).[2]

**Allegations**

On March 10, 2020, Ortiz accepted a job as an inmate Covid-19 Biohazard Cleaner. *See* Compl., ECF No. 1, at 9 ¶ 1. Captain Alexander instructed Ortiz to spray the walls and the door handles at Hartford Correctional Center with bleach. *Id.* Twice a week Ortiz was responsible for spraying all hard surfaces in the cells with bleach. *Id.* As the number of Covid-19 cases

---

[2] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

increased, Ortiz's duties expanded to include the disinfection of the cells or dorm areas of those inmates who had tested positive for the virus and had been transferred to quarantine units. *Id.* ¶ 2. Ortiz was also responsible for packing the belongings of these inmates. *Id.*

Captain Alexander informed Ortiz that Correctional Officer Rios would supply him with a biohazard suit, work boots, and an N-95 mask to wear while he performed his duties. *Id.* ¶ 3. On multiple occasions from March to May 2020, Ortiz submitted written requests and spoke to Warden McCormin, Captain Alexander, and Lieutenants Mucciani and Harley regarding his need for this protective equipment. *Id.* These officials repeatedly assured Ortiz that Officer Rios was working to fulfill his requests for equipment. *Id.* Ortiz never received the items of protective equipment. Instead, he sprayed 8 gallons of bleach a week on various hard surfaces in the prison wearing only a flimsy cloth facemask, a prison uniform, and a pair of sneakers. *Id.* ¶¶ 3-4. In addition to failing to provide Ortiz with appropriate protective equipment, Warden McCormin, Captain Alexander, Lieutenants Mucciani and Harley, and Officer Rios failed to inform Ortiz of the health risks of spraying bleach and provided him no training on how to safely disinfect surfaces using bleach. *Id.* at 10 ¶ 6.

In early May 2020, Captain Alexander assigned Ortiz to take over the responsibilities of a correctional officer who had been tasked with spraying every unit using a five-gallon container of bleach strapped to his back because the officer had been assaulted by an inmate and could no longer perform his duties. *Id.* ¶ 8. Although the correctional officer had performed the job wearing a full biohazard suit, goggles, and an N-95 mask, Captain Alexander did not provide Ortiz with the same protective equipment. *Id.* Ortiz informed Officer Rios of his new job responsibilities and requested that Rios provide him with goggles, an N-95 mask, and a

biohazard suit. *Id.* at 10-11 ¶ 9. Rios stated that he only had enough masks for staff members, he was working on getting more masks, and asked Ortiz to be patient. *Id.*

In late September or early October 2020, Lieutenants Mucciani and Harley summoned Ortiz to the segregation unit. *Id.* at 11 ¶ 15. When Ortiz arrived in the unit, Officer Rios handed him a biohazard suit and a pair of gloves and indicated that there was a mess in the unit to be cleaned up. *Id.* at 11-12 ¶¶ 14, 16. Officer Rios escorted Ortiz to a hallway that was covered from floor to ceiling with urine and feces. *Id.* at 11 ¶ 15. The officer's station at the end of the corridor was also covered with urine and feces. *Id.* Lieutenant Mucciani directed Ortiz to use a squeegee to push the urine and feces to the edges of the hallway to make a path for officers. *Id.* at 12 ¶ 16. Unbeknownst to Ortiz, the inmate who had thrown the feces and urine all over the hallway and the office's station was still in his cell. *Id.* As Ortiz tried to move past the cell, the inmate threw cups of feces and urine at Ortiz hitting him in the face and body. *Id.* ¶ 17. Ortiz had no goggles, mask, or covering for his head. *Id.* The urine and feces saturated Ortiz's biohazard suit. *Id.* Lieutenant Mucciani directed Officer Rios to provide Ortiz with a new suit and then ordered Ortiz to squeegee the hallway again. *Id.* ¶ 18. Ortiz attempted to clear a path down the hallway, but the same inmate assaulted him again with feces and urine. *Id.* ¶ 19.

Lieutenant Mucciani ordered Ortiz to return to the entrance to the hallway and directed an emergency extraction team to restrain the inmate who had been throwing feces and urine. *Id.* ¶ 20. After the extraction team removed the inmate from the cell and escorted him to another part of the facility, Officer Rios, and Lieutenant Mucciani provided Ortiz with bleach and ordered him to clean the hallway from top to bottom. *Id.* at 13 ¶ 21. Ortiz asked for an N-95 mask to protect him from the fumes from the bleach. *Id.* Although Officer Rios indicated that he would

4

get a mask for Ortiz, he never returned to the segregation unit. *Id.* Approximately an hour later, Ortiz asked Warden McCormin for a mask to cover his mouth because he was having difficulty breathing. *Id.* ¶ 22. The warden stated that he would ask Officer Rios to provide Ortiz with a mask and something to protect his eyes. *Id.* No one provided Ortiz with a mask or any other protective equipment as he cleaned the hallway. *Id.*

On May 1, 2021, prison officials at Hartford Correctional Center transferred Ortiz to Corrigan-Radgowski Correctional Institution. *Id.* ¶ 25. Ortiz observed that inmate biohazard workers at Corrigan-Radgowski wore full biohazard suits, gloves, goggles, and N-95 masks. *Id.* Ortiz spoke to the biohazard workers and learned that they had participated in biohazard training and had received tetanus shots tetanus shots before they started cleaning areas containing biohazardous materials. *Id.*

None of the defendants ever provided Ortiz with the protective equipment that he requested to be able to perform his janitorial job safely at Hartford Correctional Center. *Id.* at 11 ¶ 10. Ortiz visited the Hartford Correctional Center medical department approximately twelve times seeking treatment for respiratory difficulties. *Id.* ¶ 11. After examining Ortiz, a physician referred him to an otolaryngologist. *Id.* In June 2021, after Ortiz's transfer to Corrigan-Radgowski, an otolaryngologist at the University of Connecticut Health Center examined him and concluded that his breathing difficulties and damage to his nasal cavity were caused by inhalation of the bleach fumes over a long period without wearing a protective mask. *Id.* ¶ 12. The otolaryngologist suggested that surgery would be required to repair the damage to Ortiz's nasal cavity and that Ortiz might not regain full respiratory function. *Id.* ¶ 13.

**Discussion**

Ortiz alleges that the defendants were deliberately indifferent to his safety in violation of the Eighth Amendment.  He requests damages for future medical expenses, exemplary damages, and compensatory damages.

**Official Capacity Claims**

Ortiz sues the defendants in their individual and official capacities.  To the extent that he seeks damages from the defendants in their official capacities for violations of his federal constitutional rights, those claims are barred by the Eleventh Amendment and are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity).

**Individual Capacity Claims**

The allegations that the defendants were deliberately indifferent to Ortiz's safety during his confinement at Hartford Correctional Center as a pretrial detainee from March 2020 to the end of August 2020 are governed by the Fourteenth Amendment's substantive due process guarantee.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2017) (holding that claims pertaining to the conditions of a pretrial detainee's confinement in a state prison facility should be evaluated under the Fourteenth Amendment's Due Process Clause because "[a] [p]retrial detainee[] ha[s] not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.").  The allegations that the defendants were deliberately indifferent to Ortiz's health and safety after he was sentenced to a term of imprisonment on August 31, 2020 are governed by the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Court has considered the now well-established requirements for pleading a deliberate indifference to health and safety claim under both the Fourteenth Amendment and the Eighth Amendment.  *See, e.g. Darnell* 849 F. 3d at 30-35*; Farmer* 511 U.S. at 834.  Plaintiff's allegations adequately and plausibly allege a Fourteenth Amendment claim arising out of the events occurring between March 2020 and August 30, 2020. He has also plausibly alleged an Eighth Amendment claim arising out of the events occurring on or after August 31, 2020.

Ortiz alleges that the dangerous conditions to which he was exposed, including fumes or vapors from bleach, inmates who were infected with COVID-19, and contact with another inmate's feces and urine, posed a substantial risk or harm to his health and safety.  These allegations are sufficient to meet the objective or first prong of both the Eighth and the Fourteenth Amendment standards.  *See, e.g., Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) ("[W]hether exposure to human waste is cruel and unusual depends on both the duration and the severity of the exposure. Where, for example, an exposure to human waste lasts merely ten minutes, but that exposure takes the form of working in a well while facing a shower of human excrement without protective clothing and equipment, a jury may find an Eighth Amendment violation.") (internal quotation marks and citation omitted); *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at *21 (D. Conn. 2020) (It cannot be disputed that "COVID-19 "is a highly dangerous disease that poses a significant risk of severe illness and death[.]"); *Jackson v. Goord,* 664 F.Supp.2d 307, 320 (S.D.N.Y. 2009) ("[A]reasonable fact-finder could conclude, based on plaintiff's testimony about his prolonged exposure to the harmful effects of the materials and the inadequacy of the safety equipment, that plaintiff was exposed to levels of toxins and chemicals that posed an

unreasonable risk of serious damage to his immediate or future health.").

Ortiz further asserts that he was exposed to these hazards without the proper protective equipment, and that the risk to him of performing his job without proper protection were either obvious to the defendants or known to the defendants because he had made them aware of the risk of harm, including and especially the effect on his respiratory system of his prolonged exposure to bleach fumes. Notwithstanding the defendants' actual knowledge of the harm to which he was exposed, he alleges the defendants took no action to prevent, limit, or mitigate his exposure to these potentially dangerous conditions or attempt to remedy the conditions at any time after learning about them.  These allegations plausibly allege the *mens rea* prong of the Fourteenth Amendment standard and the subjective prong of the Eighth Amendment standard. The Eighth and the Fourteenth Amendment deliberate indifference to health and safety claims will proceed against the defendants in their individual capacities.

**ORDERS**

In accordance with the foregoing analysis, the court enters the following orders:

**(1)** The requests seeking damages from the defendants in their official capacities for violations of Ortiz's federal constitutional rights are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The Eighth and Fourteenth Amendment deliberate indifference to health and safety claims will proceed against Warden McCormin, Captain Alexander, Lieutenants Mucciani and Harley, and Correctional Officer Rios in their individual capacities.

**(2)** On or before **September 30, 2021,** the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for: Warden McCormin, Captain Alexander, Lieutenant Mucciani, Lieutenant Harley, and Correctional Officer Rios and

mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)**     Defendants McCormin, Alexander, Mucciani, Harley, and Rios shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any defenses permitted by the Federal Rules.

**(4)**     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **March 9, 2022**. Discovery requests need not be filed with the court.

**(5)**     All motions for summary judgment shall be filed by **April 9, 2022.**

**(6)**     If Ortiz changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Ortiz should write PLEASE NOTE MY NEW ADDRESS on the notice and list all case numbers.  It is not enough to just put the new address on a letter without indicating that it is a new address.  Ortiz should also notify the defendants or the attorney for the defendants of his new address.

**(7)**     Ortiz shall utilize the Prisoner Efiling Program when filing documents with the

court.  Ortiz is advised that the Program may be used only to file documents with the court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with the court.  Therefore, discovery requests must be served on the defendant's attorney by regular mail.

**(8)** The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(9)** The Clerk is directed to send a copy of the complaint and a copy of this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

SO ORDERED at Bridgeport, Connecticut this 9th day of September, 2021.

\_\_\_\_/s/_____
Kari A. Dooley
United States District Judge